■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v ANGEL RODRIGUEZ, Appellant.—Appeal by defendant from a judgment of the Supreme Court, Kings County, rendered May 29, 1974, convicting him of criminally selling a dangerous drug in the third degree, criminal possession of a dangerous drug in the fourth degree and criminal possession of a dangerous drug in the sixth degree (two counts), upon a jury verdict, and imposing sentence. Judgment modified, on the law, by reversing the convictions of criminal possession of a dangerous drug in the fourth degree and criminal possession of a dangerous drug in the sixth degree (under count three of the indictment), and the sentences imposed thereon, and the said counts are dismissed. As so modified, judgment affirmed. Under the facts of this case, defendant could not have committed the crime of criminally selling a dangerous drug in the third degree, without also having committed the crimes of criminal possession of a dangerous drug in the fourth degree and criminal possession of a dangerous drug in the sixth degree (under count three of the indictment) (see CPL 300.40, subd 3, par [b]; *People v Grier,* 37 NY2d 847). Hopkins, Acting P. J., Martuscello, Cohalan, Rabin and Titone, JJ., concur.

■ THE PEOPLE OF THE STATE OF NEW YORK, Appellant, v AUGUSTINE RODRIGUEZ, Respondent.—Appeal by the People from an order of the Supreme Court, Kings County, entered June 15, 1976, which, after a hearing, granted defendant's motion to suppress certain evidence. Order reversed, on the law and the facts, and motion denied. At approximately 9:15 P.M. on September 10, 1975, an unmarked police car was proceeding on South First Street in the County of Kings when a 1973 Chevrolet, driven by defendant, pulled away from the curb, proceeded to the corner and made a left turn. According to Patrolman John Monahan, the only person to testify at the suppression hearing, the Chevrolet pulled out from the curb approximately 10 feet in front of the unmarked car, cut the latter off and caused the officer-operator to "abruptly" brake and come to a full stop. The officers followed the Chevrolet around the corner and, at the next light, came alongside and asked the driver to pull over to the curb. Defendant complied, emerged from his car and walked over to Officer Monahan, who had also alighted. Upon the latter's request, defendant produced his license and registration. The names and addresses on the license and registration differed so, following alleged recommended departmental procedure, Officer Monahan "went to kneel towards" the Chevrolet's front door post, the door

having been left open by defendant, to check out the VIN plate number. As he did so, he observed a part of the handle of what appeared to be a gun protruding from underneath the rear of the driver's seat. Officer Monahan retrieved the gun and placed defendant under arrest. Criminal Term indicated that it was otherwise inclined to hold the door-post examination valid but, upon a fact finding that defendant had pulled out from the curb in such a manner as to only cause the police car to "brake slightly", deemed a "mere inconvenience", held that the initial stopping of the vehicle had been improper. We disagree. This is not a case of a stop based upon suspicion, either that criminal activity was afoot (see, e.g., *People v Martinez,* 37 NY2d 662; *People v Puglisi,* 51 AD2d 695) or that the defendant somehow did not appear to belong in the car he was driving (see, e.g., *People v Murray,* 48 AD2d 907). Nor was this a stop for a routine traffic check based upon mere whim or caprice (see, e.g., *People v Simone,* 39 NY2d 818; *People v Ingle,* 36 NY2d 413). Rather, we have here "specific and articulable facts" which supported the existence of "reasonable suspicion", in the minds of the police officers, that defendant had violated the Vehicle and Traffic Law in the manner in which he had pulled his car away from the curb (see Vehicle and Traffic Law, § 1162; *People v Ingle, supra,* pp 419, 420; *People v Middleton,* 50 AD2d 1040). The initial stop having been entirely proper, neither the weapon found therein (in partial "plain view" through the open door when the officer went to examine the door post for the VIN plate) nor the allegedly spontaneous statement as to the gun's origin, made by defendant upon its discovery, should have been suppressed. Hopkins, Acting P. J., Martuscello, Cohalan, Rabin and Titone, JJ., concur.